UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 NOV 17 PM 1: 54

CLERK
BY_____
DEPUTY CLERK

ISAAC JOLLIE-COGHLAN,               )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )       Case No. 2:25-cv-00182-cr
                                    )
CITY OF BURLINGTON, VERMONT;        )
JON MURAD, individually and in his official  )
capacity as Chief of Police for the City of  )
Burlington, Vermont; and            )
CORY CAMPBELL, individually and in his  )
official capacity as a police officer for the  )
City of Burlington, Vermont,        )
                                    )
        Defendants.                 )

**OPINION AND ORDER
GRANTING THE CITY'S MOTION FOR JUDGMENT ON THE PLEADINGS,
GRANTING CHIEF MURAD'S MOTION FOR JUDGMENT ON THE
PLEADINGS, DENYING OFFICER CAMPBELL'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS, AND GRANTING PLAINTIFF LEAVE TO
AMEND**
(Docs. 16, 17, 18)

Plaintiff Isaac Jollie-Coghlan ("Plaintiff") brings this action against the City of

Burlington, Vermont (the "City"); former Police Chief Jon Murad, individually and in his

official capacity as Chief of the Burlington Police Department ("BPD") ("Chief Murad");

and BPD Officer Cory Campbell, individually and in his official capacity ("Officer

Campbell") (collectively, "Defendants"). Plaintiff alleges Defendants are liable for

violating his Fourth Amendment right to be free from excessive force and illegal arrest

under 42 U.S.C. § 1983 and for assault and battery.

Pending before the court are motions for judgment on the pleadings, (Docs. 16,

17), filed by the City and Chief Murad individually on May 9, 2025, pursuant to Fed. R.

Civ. P. 12(c). The City and Chief Murad argue Plaintiff has failed to state a plausible

claim against them as a matter of law. Also pending before the court is a motion for partial judgment on the pleadings, (Doc. 18), filed by Officer Campbell on May 9, 2025, pursuant to Fed. R. Civ. P. 12(c). Officer Campbell argues Plaintiff has failed to state a plausible claim of assault against him as a matter of law. On June 19, 2025, Plaintiff opposed the motions. (Docs. 26, 27, 28.) On July 1, 2025, Defendants filed replies, (Docs. 30, 31, 32), at which point the court took the motions under advisement.

Plaintiff is represented by Robb A. Spensley, Esq. Defendants are represented by Michael J. Leddy, Esq.

I.    **Allegations in the Complaint.**

During the early morning of August 11, 2024, Plaintiff was in the area of City Hall Park in Burlington, Vermont, with his friends and family when a small group of individuals "began to argue and act aggressively toward each other." (Doc. 1 at 2, ¶ 9.) Plaintiff alleges he approached the group of people and "attempted to verbally calm and deescalate the situation." *Id.* at ¶ 10. In the course of doing so, Plaintiff was allegedly "physically threatened by" an individual, which caused Plaintiff to "duck[] and back[] away[.]" *Id.* at 3, ¶¶ 12-13. Officer Campbell was on duty and responded to the incident. As Plaintiff backed away from the threatening individual, Officer Campbell "grabbed [Plaintiff] from behind and slammed [him] to the ground[,]" *id.* at ¶ 15, which caused Plaintiff to break his wrist (the "incident").

Prior to Officer Campbell grabbing him, Plaintiff did not know Officer Campbell was present at the scene. Officer Campbell arrested Plaintiff and cited him for disorderly conduct, but no criminal charges were brought against Plaintiff as a result of the incident. Plaintiff alleges that "[p]rior to this incident, [Officer Campbell] has been found to have violated department policy during at least one previous incident where he used force against a person." *Id.* at 5, ¶ 30. Plaintiff asserts that the City and Chief Murad were "aware" of Officer Campbell's alleged department policy violation prior to the incident. *Id.* at ¶¶ 31-32.

Plaintiff asserts twelve causes of action: violation of his Fourth Amendment right to be free from excessive force under 42 U.S.C. § 1983 against Officer Campbell (Count

2

I), the City (Count II), and Chief Murad (Count III); violation of his Fourth Amendment right to be free from illegal arrest under 42 U.S.C. § 1983 against Officer Campbell (Count IV), the City (Count V), and Chief Murad (Count VI); assault against Officer Campbell (Count VII), the City (Count VIII), and Chief Murad (Count IX); and battery against Officer Campbell (Count X), the City (Count XI), and Chief Murad (Count XII).

## II.    Conclusions of Law and Analysis.

### A.    Standard of Review.

Federal Rule of Civil Procedure 12(c) provides "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that [for granting] a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020) (alteration in original) (internal citations and quotation marks omitted) (quoting *Patel v. Contemp. Classics*, 259 F.3d 123, 126 (2d Cir. 2001)).

To survive a Rule 12(c) motion, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009)). The sufficiency of a plaintiff's complaint is evaluated using a "two-pronged approach[.]" *Id.* at 161 (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (internal citation omitted).

Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d

Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B.    Whether Plaintiff's *Monell* Claims Against the City Should Be Dismissed.

Plaintiff asserts the City is liable for violating his Fourth Amendment rights under 42 U.S.C. § 1983 under two theories. First, Plaintiff alleges the City's "intentional hiring and retention of [Officer Campbell]," (Doc. 1 at 6, 8, ¶¶ 43, 52), after it became aware that he "ha[d] violated department policy during at least one previous incident where he used force against a person[,]" caused him to use excessive force against and illegally arrest Plaintiff. *Id.* at 5, ¶ 31. Second, Plaintiff alleges the City "fail[ed] to adequately train, supervise, or discipline" Officer Campbell, which caused him to use excessive force against and illegally arrest Plaintiff. *Id.* at 6, 8, ¶¶ 43, 52.

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be liable under § 1983 for its employees' unconstitutional acts "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "It is well established that under § 1983, local governments are responsible only for their *own* illegal acts." *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (emphasis in original) (internal quotation marks and citations omitted). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Coon v. Town of Springfield*, 404 F.3d 683, 686 (2d Cir. 2005) (quoting *Monell*, 436 U.S. at 694).

"[A] plaintiff must demonstrate that through its deliberate conduct, the municipality was the moving force behind the injury alleged[.]" *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (internal quotation marks, emphasis, and citations

omitted). To assert a *Monell* claim, a plaintiff must allege "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Id.* at 97 (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023) (internal quotation marks omitted) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). As this court has observed:

> The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality; (2) actions directed by the government's authorized decisionmakers or those who establish governmental policy; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees.

*Connelly v. City of St. Albans*, 2024 WL 1976658, at *14 (D. Vt. May 3, 2024) (alteration adopted) (quoting *Deferio v. City of Syracuse*, 770 F. App'x 587, 589-90 (2d Cir. 2019)). "A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Id.* at *14 (internal quotation marks and citations omitted).

In some circumstances, a municipality's failure to train or supervise its employees "about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. However, a municipality's "failure to train or supervise city employees may constitute an official policy or custom [only] if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray v. City of N.Y.*, 490 F.3d 189, 196 (2d Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "[D]eliberate indifference is a stringent standard of fault[.]" *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997) (internal quotation marks omitted). "To establish deliberate indifference[,] a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate

action to prevent or sanction violations of constitutional rights." *Jones*, 691 F.3d at 81. "The operative inquiry is whether the facts suggest that the policymaker's inaction was the result of a 'conscious choice' rather than mere negligence." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) (citation omitted).

The Second Circuit has identified three requirements that "must be met before a municipality's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens[]": (1) "a policymaker knows to a moral certainty that [his or] her employees will confront a given situation[,]" (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation[,]" and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.*, 974 F.2d 293, 297-98 (2d Cir. 1992) (internal quotation marks and citations omitted). "[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

Although *Monell* claims based on a failure to train and failure to supervise are similar in nature, they are "two distinct theories of [] deliberate indifference[.]" *Amnesty Am.*, 361 F.3d at 127. "Because these theories emphasize different facts and require different showings in order to establish deliberate indifference, they must be analyzed independently, rather than evaluated collectively[.]" *Id.* (footnote omitted).

### 1.     Whether Plaintiff Has Plausibly Alleged that Chief Murad Is a Final Policymaking Official.

As a threshold requirement for his *Monell* claims against the City, Plaintiff must plausibly allege that Chief Murad was a final policymaking official who caused the alleged constitutional violations. *See Praprotnik*, 485 U.S. at 123. "[One] method of implicating a policymaking official through [a] subordinate['s] conduct is to show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Amnesty Am.*, 361 F.3d at 126.

6

The City argues that Plaintiff's *Monell* claims are legally insufficient because Chief Murad, the only individual that Plaintiff asserts had notice of Officer Campbell's alleged prior department policy violation, is not a final policymaking official. (Doc. 16-1 at 10-15.) In response, Plaintiff contends that "[w]hether [Chief] Murad is a policymaker ... [is a] question[] of fact" that should be determined by a jury and not by the court at this stage. (Doc. 26 at 5.) While Plaintiff need not *prove* that Chief Murad is a final policymaking official at this stage in the proceedings, his Complaint must at least plausibly allege that status. *See, e.g., Hu v. City of N.Y.*, 927 F.3d 81, 105 (2d Cir. 2019) (affirming a district court's dismissal of the plaintiffs' *Monell* claim because in the complaint, "the plaintiffs [did] not raise[] a plausible inference that their constitutional injuries were caused by a [c]ity official with final policymaking authority[]"). Moreover, "[w]hether the official in question possessed final policymaking authority is a legal question," not a factual question, "which is to be answered on the basis of state law[.]" *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (internal citations omitted).

The City cites statutes, the City Charter, and case law in support of its argument that "Chief Murad cannot be considered a final City policymaker as a matter of law[.]" (Doc. 16-1 at 14) (citation omitted).[1] As the City concedes, there is no per se rule that police chiefs cannot constitute final policymaking officials for a *Monell* claim. *See id.* at

---

[1] Plaintiff contends the City's use of the City Charter is an improper use of "extraneous evidence not contained within the pleadings in an effort to prove factual arguments[.]" (Doc. 26 at 2.) Courts may generally consider city charters in ruling on a motion for judgment on the pleadings. *See S Moore U.S.A., Inc. v. Standard Reg. Co.*, 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001) (stating that, at the pleadings stage, courts may "consider matters of public record" including "statutes, case law, *city charters*, city ordinances, criminal case dispositions, letter decisions of government agencies, published reports, records of administrative agencies, or pleadings in another action[]") (emphasis supplied) (collecting cases); *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015) ("In considering a motion to dismiss, a court is permitted to take judicial notice of public records[.]") (citations omitted); *but see Clark v. City of Oswego*, 2007 WL 925724, at *5 n.6 (N.D.N.Y. Mar. 26, 2007) ("Although some Circuit Courts have taken judicial notice of city charters and related ordinances, the Second Circuit has yet to join them. Accordingly, the Court has not considered the ... City Charter in its disposition of [the] plaintiff's First Amendment retaliation claim.") (internal citations omitted). However, the court need not address Plaintiff's argument because it decides this issue without reliance on the City Charter.

14 ("Various federal courts that have grappled with the legal question of a police chief's alleged policymaking authority under a particular state's law have not all reached the same conclusion in every case."). Therefore, at the motion for judgment on the pleadings stage, the proper inquiry is not whether Chief Murad is a final policymaker as "a matter of law." *See, e.g., Bates v. Town of Cavendish*, 735 F. Supp. 3d 479, 493 (D. Vt. 2024) (denying a motion to dismiss the plaintiffs' *Monell* claims because "[a]t the pleading stage, [the p]laintiffs have plausibly alleged that[]" the town manager was a final policymaking official); *see also Christiansen*, 852 F.3d at 201 (stating that, at the motion to dismiss stage, it is not the role of the court to consider whether it will "be difficult for [a plaintiff] to withstand summary judgment[]").

An individual is a policymaking official if they have "final policymaking authority." *Praprotnik*, 485 U.S. at 123 (internal quotation marks and citation omitted). Although "supervisory authority is not the equivalent of final policymaking authority[,]" *Chirdon v. Borough of Plum*, 92 F. Supp. 3d 360, 366 (W.D. Pa. 2015) (citations omitted), "the critical inquiry is not whether an official generally has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (citation omitted).

"An official has final authority if his decisions, at the time they are made, 'may fairly be said to represent official policy.'" *Id.* (quoting *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784 (1997)). Put differently, "[a]n official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Anthony v. City of N.Y.*, 339 F.3d 129, 139 (2d Cir. 2003) (internal quotation marks omitted) (quoting *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983)). Decisions that are "reviewable by higher-level officials . . . [cannot] be 'final' policymaking decisions." *Agosto*, 982 F.3d at 94.

In addition to being final, the official's authority must concern policymaking. *See id.* at 98, 100 (stating that "[i]t is not enough that an official had discretion to make a decision that was unreviewable" and rejecting "equating a final decisionmaker with a

8

final policymaker[]"). An official has policymaking authority when they are "sufficiently 'high up in the municipal hierarchy[]' that [they are] 'responsible under state law for making policy in that area of the municipality's business[.]'" *Id.* at 98. "Stated another way, the official must have [] state-law 'authority to adopt rules for the conduct of [the municipal] government.'" *Id.* (second alteration in original) (quoting *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992)).

While the City cites cases "holding that a police chief is not necessarily a final municipal policymaker for *Monell* purposes[,]" (Doc. 16-1 at 14) (footnote omitted), other courts have found that a police chief is a final municipal policymaker for *Monell* purposes.[2] Case law reaching different results on this issue reflects the reality that determining "[w]hether a police chief is a policymaker is fact specific[.]" *Dingwell v. Cossette*, 327 F. Supp. 3d 462, 475 (D. Conn. 2018). Although a more robust factual record may be necessary to make this legal determination, conclusory allegations are insufficient to plausibly allege that an individual is a final policymaker for *Monell* purposes.[3]

---

[2] *Compare Jackson v. Williams*, 2017 WL 1162196, at *2 (N.D.N.Y. Mar. 28, 2017) (explaining that "some courts have found that certain police chiefs were not final policymakers with respect to particular issues" and citing cases), *and Hardy v. Town of Greenwich*, 2009 WL 2176117, at *6 (D. Conn. July 22, 2009) (finding the police chief was not a final policymaker regarding employment issues because while he "certainly enjoyed discretion to decide which employees to appoint to specialized units, that discretion was not unconstrained[,]" as it "remained subject to the Town's policies and oversight by [superiors]"), *with Ocasio v. City of Canandaigua*, 513 F. Supp. 3d 310, 325 (W.D.N.Y. 2021) ("Plaintiffs have plausibly alleged that [the defendant], as the [p]olice [c]hief for the [c]ity, was a final policymaker for purposes of the relevant events, to the extent that he had the authority to train, supervise and/or discipline [the subordinate officer], and to enforce policies and procedures for the sheriff's department."), *and Dingwell v. Cossette*, 327 F. Supp. 3d 462, 475 (D. Conn. 2018) (holding the plaintiff's amended complaint plausibly alleged that the chief of police was a final policymaker for his *Monell* claim), *and Donovan v. Norwich City Sch. Dist.*, 2022 WL 623904, at *12 (N.D.N.Y. Mar. 3, 2022) ("Plaintiff has plausibly alleged that the [p]olice [c]hief is a final policymaker for purposes of some of the relevant events[;] that is, to the extent the [police c]hief had the authority to train, supervise and/or discipline officers, and to enforce policies and procedures for the police department.") (citation omitted).

[3] *See Taranto v. Putnam Cnty.*, 2023 WL 6318280, at *21 (S.D.N.Y. Sept. 28, 2023) (finding complaint's allegation that defendant "is the final decision/policy maker of the . . . [s]heriff's [d]epartment and [] is familiar with, creates[,] and implements his [d]epartment's practices and

In his Complaint, Plaintiff alleges that "[t]he position of Burlington chief of police, held at all relevant times by [Chief Murad], is the chief executive of the [BPD] and bears responsibility and authority to hire, retain, terminate, and discipline employees, including police officers[,]" and "to supervise, direct, and train employees, including police officers." (Doc. 1 at 5, ¶¶ 28-29.) These conclusory allegations do not plausibly allege that Chief Murad was a final policymaking official for *Monell* purposes. Plaintiff's *Monell* claims against the City are therefore DISMISSED. Because leave to amend is granted, the court proceeds to analyze the remainder of Plaintiff's *Monell* claims.

### 2. Whether Plaintiff Has Plausibly Alleged a Custom or Widespread Practice.

Plaintiff alleges that prior to the incident, Officer Campbell "ha[d] been found to have violated department policy during at least one previous incident where he used force against a person[,]" (Doc. 1 at 5, ¶ 30), and the City was aware of his department policy violation yet retained him as a police officer. The Complaint does not describe the previous incident or whether it was found to constitute excessive force. Retaining a police officer after one violation does not plausibly establish a "persistent and widespread" practice of constitutional violations within the BPD, unless the use of force was so excessive that no reasonable decision-maker would retain the officer. *Connick*, 563 U.S.

---

policies" was insufficient because plaintiffs "d[id] not point to any support for this proposition, which they must do to sufficiently allege [defendant] was a final policymaker with respect to the particular conduct challenged in this lawsuit[]"); *Coppola v. Town of Plattekill*, 2018 WL 1441306, at *10 (N.D.N.Y. Mar. 22, 2018) (finding complaint's "minimal, conclusory statements" that the police officers had final policymaking authority "fall far short of satisfying [p]laintiff's burden to allege facts creating a plausible inference that either of these defendants were final policymakers[]" because "[p]laintiff [did] not direct the [c]ourt to New York State law, municipal charters, or any other source that could support her claim[]"); *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 2016 WL 1274587, at *12-13 (S.D.N.Y. Mar. 31, 2016) (dismissing plaintiffs' *Monell* claim because the complaint "cite[s] no state or county law that actually vests [the school district administrator] with final policymaking authority over the maintenance and protection of student records[,]" and thus, "[p]laintiffs have [not] plausibly alleged . . . any unconstitutional act by a policymaker with final decision-making authority[]"); *Canner v. City of Long Beach*, 2015 WL 4926014, at *6 (E.D.N.Y. Aug. 18, 2015) (noting that because plaintiffs' complaint "did not reference any state law supporting their claim that [the police officer] was a final policymaker," the court previously dismissed plaintiffs' *Monell* claim).

2:25-cv-00182-cr    Document 46    Filed 11/17/25    Page 11 of 22

at 61.[4] This is especially true where, as here, Plaintiff has not alleged that Officer

Campbell's prior use of force was unlawful or rose to a constitutional violation, only that

it violated an unidentified "department policy[.]" Doc. 1 at 5, ¶ 30; *see also Connelly,*

2024 WL 1976658, at *14.

Because Plaintiff has not plausibly asserted that a custom or widespread practice

rose to a *Monell* violation, he has not stated a claim for relief as required by Federal Rule

of Civil Procedure 12(b)(6).

### 3.    Whether Plaintiff Has Plausibly Alleged a Policy of Failing to Train.

For a failure to train claim, the Supreme Court has instructed:

> A pattern of similar constitutional violations by untrained employees is
> "ordinarily necessary" to demonstrate deliberate indifference for purposes
> of failure to train. Policymakers' "continued adherence to an approach that
> they know or should know has failed to prevent tortious conduct by
> employees may establish the conscious disregard for the consequences of
> their action—the 'deliberate indifference'—necessary to trigger municipal
> liability." Without notice that a course of training is deficient in a particular
> respect, decisionmakers can hardly be said to have deliberately chosen a
> training program that will cause violations of constitutional rights.

*Connick*, 563 U.S. at 62 (internal citations omitted).

A *Monell* claim "is at its most tenuous where [it] turns on a failure to train." *Id.* at

61 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). When a municipality

has a training program, a plaintiff must allege "*a specific deficiency* in the city's training

program and establish that that deficiency is closely related to the ultimate injury, such

---

[4] *See also Jones v. Town of E. Haven*, 691 F.3d 72, 85 (2d Cir. 2012) (holding that three
incidents of police abuse toward Black individuals "fell far short of showing a policy, custom, or
usage of officers"); *Connelly v. City of St. Albans*, 2024 WL 1976658, at *16 (D. Vt. May 3,
2024) ("[I]solated acts of excessive force by non-policymaking municipal employees are
generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify
municipal liability.") (internal quotation marks and citations omitted) (alteration in original);
*Norton v. Town of Islip*, 2016 WL 264930, at *7 (E.D.N.Y. Jan. 21, 2016) (noting "two, three, or
even four incidents" of unconstitutional conduct by non-policymakers does not support inference
of widespread policy or custom); *Pittman v. City of N.Y.*, 2014 WL 7399308, at *7 (E.D.N.Y.
Dec. 30, 2014) ("A *Monell* claim cannot go forward based on conclusory claims regarding a
single incident without more evidence that connects this incident to a municipal policy or
practice.") (citations omitted).

11

that it actually caused the constitutional deprivation." *Wray*, 490 F.3d at 196 (emphasis supplied) (internal quotation marks and citations omitted). A plaintiff "must establish that 'the officer's shortcomings . . . resulted from . . . a faulty training program' rather than from the negligent administration of a sound program or other unrelated circumstances." *Amnesty Am.*, 361 F.3d at 129-30 (quoting *Harris*, 489 U.S. at 390-91).

In his Complaint, Plaintiff alleges that "the [City] has intentionally failed to adequately train . . . its officers to ensure they do not violate the [c]onstitutional rights of other people under the color of law." (Doc. 1 at 5, ¶ 35.) A conclusory allegation of this nature does not satisfy the *Iqbal/Twombly* plausibility requirement. *See Iqbal*, 556 U.S. at 678; *see also Connelly*, 2024 WL 1976658, at *17 (dismissing the plaintiff's *Monell* claim based on a policy of failing to train because the complaint "has not identified any deficiency in the City's training or a lack of training that caused [the plaintiff's] injuries.") (citations omitted). Accordingly, the Complaint fails to plausibly allege that the City is liable under § 1983 through a failure to train theory.

### 4. Whether Plaintiff Has Plausibly Alleged a Policy of Failing to Supervise.

For a failure to supervise claim, a plaintiff must allege "that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious,' and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." *Amnesty Am.*, 361 F.3d at 128 (internal citation omitted). A failure to supervise claim also requires that a plaintiff allege "that the [] defendant['s] inadequate supervision actually caused or was the moving force behind the alleged violations." *Brush v. Old Navy LLC*, 687 F. Supp. 3d 452, 496 (D. Vt. 2023) (internal quotation marks omitted) (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007)).

Here, Plaintiff asserts that the City was "aware" Officer Campbell "violated department policy" and the City "intentionally failed to . . . supervise [him] to ensure he does not violate the [c]onstitutional rights of other people under the color of law." (Doc.

1 at 5, ¶¶ 31, 37.) Plaintiff's allegation is conclusory and bereft of facts revealing how the City neglected to investigate or remedy Officer Campbell's alleged violation of department policy. It is not enough to allege that, after one instance of alleged misconduct, the City continued Officer Campbell's employment.

Moreover, Plaintiff fails to plausibly allege that the City's inaction rises to the level of deliberate indifference. *Compare Brush*, 687 F. Supp. 3d at 496 n.13 ("[A] single instance of inadequate investigation is insufficient to show the [municipality]'s deliberate indifference."), *with Outlaw*, 884 F.3d at 380 ("[A] municipal policy of deliberate indifference to the use of excessive force by police officers may be shown by evidence that the municipality had notice of complaints of the use of such force but repeatedly failed to make any meaningful investigation into such charges[.]") (citation omitted).

For the reasons stated above, Plaintiff fails to state the essential elements of a *Monell* claim for excessive force and illegal arrest against the City. Plaintiff's § 1983 claims against the City are therefore DISMISSED.

### C. Whether Plaintiff's State Law Claims Against the City Should Be Dismissed.

In its motion for judgment on the pleadings, the City argues Plaintiff's assault and battery claims must be dismissed because a municipality is immune from state law tort claims that arise out of its police department's conduct. *See Kent v. Katz*, 146 F. Supp. 2d 450, 459 (D. Vt. 2001) ("[M]unicipalities . . . 'are immune from state law claims arising from injuries caused by the operation of their police departments.'") (citation omitted), *aff'd in part,* 312 F.3d 568 (2d Cir. 2002). In his opposition, Plaintiff fails to offer a contrary argument. Plaintiff's assault and battery claims against the City are therefore abandoned. *See Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (affirming the district court's finding that the plaintiff abandoned his § 1983 claims because in response to the defendant's motion to dismiss, the plaintiff "did not address [the defendant's] state-actor argument, which was dispositive of the § 1983 claims"); *Thompson v. Kline*, 504 F. Supp. 3d 200, 213 n.5 (W.D.N.Y. 2020) (holding the plaintiff's retaliation claim was abandoned because the plaintiff "'did not contest the

dismissal' of this claim[]" in response to the defendant's motion to dismiss) (alteration adopted); *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018) (holding plaintiffs abandoned their securities fraud claim because they failed to address defendant's arguments in response to a motion to dismiss) (collecting cases); *see also Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) ("As a general matter, district courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage.") (citation omitted).

Plaintiff's state law claims of assault and battery against the City are therefore DISMISSED.

**D.    Whether Plaintiff's Request for Punitive Damages Against the City Should Be Dismissed.**

The City contends that Plaintiff's claim for punitive damages should also be dismissed because "both federal and state law bar recovery of punitive damages[]" from municipalities. (Doc. 16-1 at 18.) Under federal law, "municipalities are generally immune from punitive damages." *Connelly v. City of St. Albans*, 2024 WL 778113, at *3 (D. Vt. Feb. 26, 2024) (internal quotation marks omitted) (quoting *Zhou v. Roswell Park Cancer Inst. Corp.*, 2021 WL 4272286, at *4 (W.D.N.Y. Sept. 21, 2021)). Likewise, "[u]nder Vermont law, . . . 'municipal[ities] cannot be held liable for punitive damages.'" *Id.* (quoting *In re Town Highway No. 20*, 2012 VT 17, ¶ 72, 191 Vt. 231, 271, 45 A.3d 54, 80). Because "punitive damages against a municipality are unavailable under federal and state law[,]" *id.* at *4, Plaintiff's request for punitive damages against the City is DISMISSED.

**E.    Whether Plaintiff's Claims Against Chief Murad in His Official Capacity Should Be Dismissed.**

Plaintiff brings 42 U.S.C. § 1983 claims of excessive force and illegal arrest and state law claims of assault and battery against Chief Murad in his official capacity. In his motion for judgment on the pleadings, Chief Murad argues Plaintiff's claims against him in his official capacity should be dismissed because they "are redundant and duplicate [Plaintiff's] claims against the City[.]" (Doc. 17-1 at 3) (capitalization removed).

14

As Chief Murad points out, "[b]ased upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as 'redundant and an inefficient use of judicial resources.'" *DeJean v. Cnty. of Nassau*, 2008 WL 111187, at *5 (E.D.N.Y. Jan. 8, 2008) (quoting *Escobar v. City of N.Y.*, 2007 WL 1827414, at * 3 (E.D.N.Y. June 25, 2007)); *see also Nolen v. City of Barre*, 2011 WL 805865, at *5 (D. Vt. Mar. 1, 2011) (dismissing the plaintiff's § 1983 claims "against the individual [d]efendants in their official capacities" because they were "merely duplicative of the [§ 1983] action against the [c]ity[]") (internal quotation marks omitted). In his opposition, Plaintiff fails to address Chief Murad's redundancy argument for dismissal. The court therefore deems Plaintiff's claims against Chief Murad in his official capacity abandoned and redundant. They are therefore DISMISSED.

**F.    Whether Plaintiff's § 1983 Claims Against Chief Murad in His Individual Capacity Should Be Dismissed.**

Plaintiff asserts Chief Murad is liable in his individual capacity for violating his Fourth Amendment rights under 42 U.S.C. § 1983 because Chief Murad hired and retained Officer Campbell and failed to adequately train, supervise, and discipline him, which allegedly caused him to use excessive force against and illegally arrest Plaintiff.

"A supervisor may not be held liable under [§] 1983 merely because his subordinate committed a constitutional tort." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) (citation omitted). "To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citation omitted). A plaintiff must "establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

In *Iqbal*, the Supreme Court explained that "the term 'supervisory liability" is a misnomer[,]" because "[a]bsent vicarious liability, each [g]overnment official . . . is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. After *Iqbal*, in the Second

15

Circuit, "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). Put differently, "[a] plaintiff must establish that the supervisory defendant 'actively participated in a constitutional violation.'" *Felciano v. Town of E. Hartford*, 2023 WL 4826465, at *5 (D. Conn. July 27, 2023) (citations omitted). Generally, a supervisor may be held liable as a "direct participant" in a constitutional violation only where he or she "authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014) (internal quotation marks and citation omitted).

Plaintiff argues that his Complaint plausibly alleges "that [Chief] Murad knew [Officer] Campbell had previously violated department policy when using force, that [Chief] Murad retained [Officer] Campbell anyway, and that in doing so [Chief] Murad caused a violation of Plaintiff's constitutional rights." (Doc. 27 at 4.) He does not allege, however, that Chief Murad participated in the incident or authorized, ordered, or helped Officer Campbell commit the allegedly unconstitutional acts. Knowledge of a prior incident and retention thereafter, even accepted as true, is insufficient to state a claim because a § 1983 claim must plausibly allege each defendant's personal involvement in the constitutional violation.[5] Plaintiff's § 1983 claims for excessive force and illegal

---

[5] *See Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) ("[I]t is not enough for [the plaintiff] to show that [the defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had."); *Nolen v. City of Barre*, 2011 WL 805865, at *4 (D. Vt. Mar. 1, 2011) (dismissing the plaintiff's § 1983 claims because "[a] complaint based upon a violation under [§] 1983 that does not allege the personal involvement of a defendant fails as a matter of law[]"); *Harris v. McAlistor*, 2023 WL 5830337, at *8 (W.D.N.Y. Sept. 8, 2023) (dismissing the plaintiff's § 1983 claim against a defendant "[b]ecause [the plaintiff] does not allege that [the defendant] was personally involved in any application of force[]"); *Cortes v. City of N.Y.*, 148 F. Supp. 3d 248, 255 (E.D.N.Y. 2015) (dismissing a § 1983 claim for false arrest because there was no evidence "that [the defendant] had any role in [the] plaintiff's arrest[]" as "[h]e arrived after the arrest occurred[]"). *Cf. Figuereo v. City of Saratoga Springs*, 2025 WL 460784, at *10 (N.D.N.Y. Feb. 11, 2025) (denying dismissal of plaintiff's § 1983 claims against some defendants for excessive force because the plaintiff plausibly alleged that the defendants were either personally involved in or directly authorized the use of excessive force).

16

arrest against Chief Murad in his individual capacity are therefore DISMISSED.

### G.    Whether Plaintiff's State Law Claims Against Chief Murad in His Individual Capacity Should Be Dismissed.

Plaintiff alleges that, as Officer Campbell's "employer, director, and supervisor," Chief Murad is liable in his individual capacity for Officer Campbell's alleged assault and battery. (Doc. 1 at 9, 10, ¶¶ 64, 73.) Under Vermont law, the doctrine of *respondeat superior* provides that "an employer or master is held vicariously liable for the tortious acts of an employee or servant committed during, or incidental to, the scope of employment." *Brueckner v. Norwich Univ.*, 730 A.2d 1086, 1090 (Vt. 1999).

To properly plead a tort claim under a *respondeat superior* theory, a plaintiff must allege "an employer-employee relationship" and that the defendant's employee committed "tortious acts . . . during, or incidental to, the scope of employment." *Kuligoski v. Rapoza*, 2018 VT 14, ¶¶ 13-14, 207 Vt. 43, 49-50, 183 A.3d 1145, 1150-51 (citations and internal quotation marks omitted). "In the context of tort cases, [Vermont courts] have relied upon the common law 'right[-]to[-]control' test to determine whether a worker is an employee or an independent contractor." *Id.* at ¶ 14, 207 Vt. at 50, 183 A.3d 1151 (citations omitted). "Under this test, a worker is an employee if 'the party for whom work is being done may prescribe not only what the result shall be, but also may direct the means and methods by which the other shall do the work.'" *Hathaway v. Tucker*, 2010 VT 114, ¶ 23, 189 Vt. 126, 137, 14 A.3d 968, 976 (quoting *Kelley's Dependents v. Hoosac Lumber Co.*, 113 A. 818, 820 (Vt. 1921).

Chief Murad argues that the right-to-control test should not be applied in this case because it is reserved for "determination[s] of employment status for unemployment insurance purposes" and the statutory definition of employer in the unemployment insurance context "is broader than the common law definition." (Doc. 32 at 6) (emphasis and internal quotation marks omitted) (quoting *Kuligoski*, 2018 VT 14, ¶ 15 n.3, 207 Vt. at 50 n.3, 183 A.3d at 1151 n.3). Notwithstanding Chief Murad's arguments, "[t]he right-to-control test is the primary and generally determinative standard[]" in Vermont for determining whether a principal is an employer for *respondeat superior* purposes.

17

*Kuligoski*, 2018 VT 14, ¶ 16, 207 Vt. at 51, 183 A.3d at 1151.

      "[W]hen [the right-to-control test] 'does not clearly answer the question, [Vermont courts] look to other factors to help analyze the nature of the employment relationship'—specifically, the factors set forth in § 220 of the Restatement (Second) of Agency." *Id.* (quoting *RLI Ins. Co. v. Agency of Transp.*, 762 A.2d 475, 477 (Vt. 2000). "Put another way, the right-to-control test is the 'general standard' and 'the remaining Restatement factors are supplementary to that test, particularly in a close case.'" *Id.* (alteration adopted) (citation omitted). These factors include "whether the worker is engaged in a distinct occupation, whether the kind of occupation engaged in is usually done under the direction of an employer, the skill required, whether the worker supplies the tools for the work, the length of time the worker is employed, whether payment is by time or by the job, whether the work is part of the regular business of the principal, whether the parties believe they are creating an employer-employee relationship, and whether the principal is or is not in business." *Id.* at ¶ 16, 207 Vt. at 51, 183 A.3d at 1152 (quoting Restatement (Second) of Agency § 220(2)(a)-(j)).

      Chief Murad argues that he cannot be held vicariously liable for Officer Campbell's tortious acts under the doctrine of *respondeat superior* because the City was Officer Campbell's employer while Chief Murad was merely his supervisor. In some states, a chief of police, as a matter of law, cannot be an employer for *respondeat superior* purposes. *See, e.g., White v. City of Winnfield*, 2021 WL 2880522, at *11 (W.D. La. Mar. 5, 2021) (citation omitted) ("Here, the *respondeat superior* claims may be dismissed outright, because under Louisiana law a police chief is not vicariously liable for acts of his or her subordinates."), *report and recommendation adopted,* 2021 WL 2879921 (W.D. La. July 8, 2021); *Wells v. City of Dayton*, 495 F. Supp. 2d 797, 805 (S.D. Ohio 2006) (dismissing the plaintiff's state law tort claims against the chief of police because "there is a paucity of Ohio authority, indicating that a supervisor is not vicariously liable for the torts committed by the employees he supervises[]"). Vermont law, however, does not automatically bar a chief of police from vicarious liability for the acts of lower-level officers under a theory of *respondeat superior*, and notably, Chief

Murad cites no Vermont cases in which this has occurred.

Chief Murad cites *Connell v. Hayden*, 443 N.Y.S.2d 383 (App. Div. 1981) in support of his argument that "[t]he doctrine of *respondeat superior* does not apply to impose vicarious liability upon supervisors." (Doc. 17-1 at 8) (internal quotation marks omitted). In *Connell*, a plaintiff brought suit against two doctors for malpractice, and the issue before the court was whether the doctors were unified in interest such that personal service of the summons and complaint on one doctor constituted personal service on the other. The court opined that generally, "[t]he doctrine of *respondeat superior* does not apply to impose vicarious liability upon supervisors . . . because [a supervisor] lacks the right to select, control, and discharge the employee[,] which is essential to the imposition of vicarious liability under that doctrine." *Id.* at 397. The court did not, however, hold that supervisors could never be found vicariously liable for the torts of an employee under a *respondeat superior* theory. To the contrary, the court noted that "[t]his does not mean that a supervisor may not be liable for the injuries caused by the conduct of one of his [or her] subordinates." *Id.* Citing Restatement (Second) of Agency, the court acknowledged the ways in which liability might be imposed on supervisors.[6]

---

[6] The *Connell* court explained:

> The grounds for holding a supervisory employee liable for the conduct of those under his supervision are stated in sections 344, 351 and 356 of the Restatement of Agency, Second, as follows:
>
> []§ 344. Liability for Directed Conduct or Consequences.
> "An agent is subject to liability, as he would be for his own personal conduct, for the consequences of another's conduct which results from his directions if, with knowledge of the circumstances, he intends the conduct, or its consequences, except where the agent or the one acting has a privilege or immunity not available to the other."
>
> []§ 351. Directing or Permitting Negligent Conduct of Others.
> "An agent who directs or permits conduct of another under such circumstances that he should realize that there is an unreasonable risk of physical harm to others or to their belongings is subject to liability for harm resulting from a risk which his direction or permission creates."
>
> []§ 356. Agent in Control of Third Persons.
> "An agent who has taken control over the conduct of another who, as he should realize, is likely to cause physical harm to the person or tangible belongings of

In his Complaint, Plaintiff does not plead any facts to plausibly allege that Chief Murad, in his individual capacity, is Officer Campbell's employer. Instead, Plaintiff alleges that "[t]he position of Burlington [C]hief of [P]olice, held at all relevant times by [Chief Murad], bears responsibility and authority to supervise, direct, and train employees, including police officers." (Doc. 1 at 5, ¶ 29.) This conclusory allegation is insufficient. *See Connelly*, 2024 WL 1976658, at *18 ("There is [] no evidence that [the chief of police], in his individual capacity, was [the sergeant's] employer."). For that reason, Plaintiff's assault and battery claims against Chief Murad in his individual capacity are DISMISSED.

**H.    Whether Plaintiff's Assault Claim Against Officer Campbell Should Be Dismissed.**

Under Vermont tort law, assault is "any gesture or threat of violence exhibiting an intention to assault, with the means of carrying that threat into effect, . . . unless immediate contact is impossible." *Bishop v. Ranney*, 7 A. 820, 820-21 (Vt. 1887) (internal quotation marks and citation omitted). An assault must "create[] a reasonable apprehension of immediate physical injury to a human being." *Id.* at 821 (internal quotation marks and citation omitted). "An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." Restatement (Second) of Torts § 21 (1965).

In support of his assault claim, Plaintiff alleges the following: "[Officer Campbell] grabbed [Plaintiff] from behind and slammed [him] to the ground[,]" and "[Plaintiff] did not know [Officer Campbell] was present prior to [this]." (Doc. 1 at 3, ¶¶ 15, 20.) Officer Campbell argues that "Plaintiff goes out of his way to create the impression that he was taken completely by surprise[]" when he alleges that "Officer Campbell grabbed him

---

third persons unless the conduct of the other is controlled, is under a duty to use reasonable care to take such measures of control as he is authorized to take."
*Connell v. Hayden*, 443 N.Y.S.2d 383, 398 (App. Div. 1981).

from behind[]" and "that he did not know that Officer Campbell was present prior to
Officer Campbell grabbing him from behind." (Doc. 18-1 at 6) (internal citations and
quotation marks omitted). Plaintiff counters that the Complaint "makes no indication
these events occurred simultaneously." (Doc. 28 at 3.) To the contrary, Plaintiff alleges
that "[Officer Campbell] grabbed him, and separate and apart, that he slammed him to the
ground." *Id.* Those allegations plausibly state a claim for assault. The question of whether
Plaintiff apprehended Officer Campbell's contact is a question of fact that cannot be
resolved at the pleading stage.

Generally, "there is no minimal time frame required for the apprehension that
gives rise to an assault claim. Even a moment's apprehension of a sudden attack is
sufficient." *S.R. ex rel. M.R. v. Turnbull*, 2013 WL 1285411, at *4 (S.D.N.Y. Mar. 28,
2013) (citation omitted). Plaintiff's allegation that he did not know Officer Campbell was
present prior to Officer Campbell "grabb[ing]" him from behind and "slamm[ing]" him to
the ground therefore does not preclude his assault claim. (Doc. 1 at 3, ¶ 15.) Drawing all
reasonable inferences in Plaintiff's favor, Plaintiff has plausibly pled that he apprehended
contact in the time between Officer Campbell "grabb[ing] [him] from behind" and then
"slamm[ing] [him] to the ground." *Id.*; *see also Knicrumah v. Albany City Sch. Dist.*, 241
F. Supp. 2d 199, 213 (N.D.N.Y. 2003) (denying summary judgment on an assault claim
when the plaintiff alleged that the defendant "[s]uddenly, without provocation,
justification, or warning, . . . [] slammed his hands onto [the] plaintiff's shoulders and
grabbed hold of [the plaintiff[]]" and "then forcefully pushed, shoved, and otherwise
propelled [the] plaintiff into a solid brick wall[]").[7]

---

[7] *See also Rivera v. Puerto Rican Home Attendants Servs., Inc.*, 930 F. Supp. 124, 133 (S.D.N.Y.
1996) (denying a motion to dismiss an assault claim even though the complaint contained "no
express allegation that either plaintiff was placed in apprehension of harmful or offensive bodily
contact or of personal injury[]"); *Reinhardt v. City of Buffalo*, 2022 WL 2442300, at *17
(W.D.N.Y. July 5, 2022) (denying a motion to dismiss an assault claim because it can be inferred
that "[p]ointing a gun at a person" creates a fear of imminent bodily harm "subjectively and
objectively"); *Abrams v. Waters*, 2018 WL 691717, at *14 (D. Conn. Feb. 2, 2018) ("During the
spraying of mace and while being slammed face-first to the ground, [the p]laintiff plausibly
experienced apprehension of harmful or offensive contact with [the defendant].").

Because Plaintiff states a plausible claim of assault against him, Officer Campbell's motion for partial judgment on the pleadings is DENIED. Fed. R. Civ. P. 12(c).

I.    **Whether Plaintiff Should Be Granted Leave to Amend.**

Pursuant to Fed. R. Civ. P. 15(a)(2), courts "should freely give leave" to amend a complaint "when justice so requires." Plaintiff is hereby GRANTED leave to amend and may submit an Amended Complaint within thirty (30) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

## CONCLUSION

For the foregoing reasons, the court GRANTS the City's motion for judgment on the pleadings, (Doc. 16), GRANTS Chief Murad's motion for judgment on the pleadings, (Doc. 17), DENIES Officer Campbell's motion for partial judgment on the pleadings (Doc. 18.), and GRANTS Plaintiff leave to amend.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 17th day of November, 2025.

Christina Reiss, Chief Judge
United States District Court